UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| URBANSTRONG LLC<br><br>*Plaintiff*,<br><br>-against-<br><br>LILY SCOTT TURNER, LILY SCOTT DESIGNS LLC AND JOHN DOE DEFENDANTS,<br><br>*Defendants*. | **Civ. Action No. 26-CV-2137**<br><br><br>**COMPLAINT** |

Plaintiff URBANSTRONG LLC ("Plaintiff" or "Urbanstrong"), by its undersigned counsel, as and for a  Complaint, states as follows:

### INTRODUCTION

1. This is an action under the Racketeer Influenced Corrupt Organizations (hereinafter, "RICO") Act, 18 U.S.C. § 1961, *et seq.*, the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and New York State law for unfair competition, conversion, misappropriation of trade secrets, breach of fiduciary duty, defamation, and tortious interference with contract, business relations, prospective economic advantage, and faithless servant.

2. Defendant Lily Scott Turner ("Turner" or "Individual Defendant") is a former employee of Urbanstrong LLC.  During her employment with Urbanstrong LLC, she and the John Doe Defendants formed a competing entity, Defendant Lily Scott Designs LLC ("Defendant LLC," and together with Turner and John Doe Defendants, the "Defendants") and together with the Defendant LLC  engaged in a coordinated  scheme pursuant to which the Defendants falsely represented to existing and prospective customers of Plaintiff that Urbanstrong was undergoing a restructuring effort or brand transition and that all projects, client engagements, and prospective business

opportunities associated with Turner's role at Urbanstrong were being transitioned to the Defendants.

3. In pursuit of this scheme, the Defendants misappropriated Plaintiff's trade secrets, clients and client information, pricing information, website content, marketing materials, and other internally developed materials.

4. In furtherance of the scheme, Defendant Turner undertook efforts to conceal evidence of her conduct, including, but not limited to, deleting emails, removing or altering project estimates within Plaintiff's systems, and eliminating records of communications with existing and prospective clients, and implementing measures to block or prevent certain client communications from reaching Plaintiff's email systems, thereby hindering Plaintiff's ability to detect and respond to Defendants' misconduct. These actions were not isolated incidents, but part of a deliberate and ongoing course of conduct designed to divert Plaintiff's business, mislead its clients, and unfairly compete using Plaintiff's own resources and goodwill.

5. Defendant Turner was terminated from employment on February 12, 2026, when Plaintiff discovered incontrovertible proof of the Defendants' scheme, including that, while still employed by Plaintiff, Turner had engaged in a course of disloyal and deceptive conduct, consisting of diverting client communications, transmitting false representations to Plaintiff's clients regarding a purported business transition, and utilizing a separately formed competing entity to misappropriate Plaintiff's business opportunities and contracts.

6. Among many things that Plaintiff uncovered in its investigation of Defendants' unlawful conduct was documentary and electronic evidence demonstrating that Defendants

engaged in a coordinated scheme to misappropriate Plaintiff's business, including falsely representing to Plaintiff's existing and prospective clients that Urbanstrong was undergoing a restructuring or brand transition, redirecting communications and payments to Defendant LLC, utilizing Plaintiff's proprietary information and materials, and deleting or concealing records of such conduct from Plaintiff's systems.

7. Unfortunately, the extent of the Defendants' scheme is still under investigation by Plaintiff.

8. The Defendants used Urbanstrong's marketing information and imagery through at least mid-March 2026.

**PARTIES**

9. Plaintiff URBANSTRONG LLC is a domestic limited liability company  existing by virtue of the laws of the State of New York, with its principal place of business located in the State of New York, County of Kings.

10. Defendant LILY SCOTT TURNER is a natural person and is a resident of the State of New York, County of Kings.

11. Defendant LILY SCOTT DESIGNS LLC is a domestic limited liability company existing by virtue of the laws of the State of New York, with its principal place of business located in the State of New York, County of Kings.

12. Defendants JOHN DOES ("Doe Defendants") are residents of the State of New York and are partners and/or members and/or employees of Defendant LLC.

**JURISDICTION**

13. This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331, as the matter arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and Civil RICO, 18

U.S.C. § 1961, *et seq*.

14. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, in that these claims are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

15. Venue is proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of New York.

**FACTUAL ALLEGATIONS**

16. Urbanstrong is engaged in business of providing services related to green infrastructure, including consulting, design, installation, and maintenance of green wall systems, vegetated roofs, solar energy systems, stormwater management systems, and other energy efficiency and green energy solutions, as well as consulting on incentives and financing associated with such installations.

17. Founded by Mr. Alan Burchell ("Burchell") in 2014, Urbanstrong quickly became an established and reputable green infrastructure firm with significant client relationships, valuable industry goodwill, and recognized expertise in the design, installation, and maintenance of green wall systems, including living walls, preserved moss walls, and artificial botanical installations, as well as green roofs and solar energy systems, with projects primarily in the New York metropolitan area and additional work performed throughout the United States.

18. Prior to Defendant Turner's employment, Urbanstrong had already developed and operated an established Green Walls division, having completed numerous green wall installations, developed relationships with key suppliers and vendors, and earned industry

recognition for its work, including awards and press coverage. Urbanstrong's core supplier relationships, design methodologies, and market positioning in the green wall sector were developed by Burchell before Turner joined the company.

19. Defendant Turner became employed by Urbanstrong on or about February 3, 2020. At the time of the termination of her employment, Turner's title was Director of Green Walls.

20. In her role, Defendant Turner was tasked to work closely with Mr. Burchell to develop and close new and existing sales opportunities, manage and/or participate in the design, fabrication and installation of Urbanstrong's green wall systems, including living walls, preserved moss walls, and artificial botanical installations, which are decorative and functional wall systems used in commercial and residential spaces for aesthetic, branding, and biophilic design purposes.

21. Throughout her employment with Urbanstrong, Defendant Turner had access to trade secrets and other confidential and proprietary information, including but not limited to the materials, processes and techniques and client information and prospective client information as well as sales and marketing information, lists of Urbanstrong vendors and suppliers with whom Mr. Burchell had developed relationships over the years, and internal pricing strategies and methodologies based on years of market research and testing; and Plaintiff's internally developed marketing and advertising strategies and methods, which were developed by Burchell and contributed to Urbanstrong's ability to efficiently capture market share within the green wall industry.

22. At the direction of Burchell, Defendant Turner worked closely with Plaintiff's clients to coordinate project scope, develop design concepts, provide technical recommendations,

5

prepare proposals, represent and promote Urbanstrong's qualifications and value in securing project awards, and oversee the execution of green wall installations from initial consultation through completion, including ongoing maintenance where applicable.

23. As part of her role with Plaintiff, Defendant Turner also had the responsibility to grow the Green Walls division by cultivating client relationships, generating and managing sales leads, developing marketing materials, sourcing quality and cost-competitive materials, preparing and presenting proposals, promoting Urbanstrong's services and expertise to the design community and building owners, and identifying new business opportunities within both existing and prospective client accounts.

24. Upon information and belief, on or about October 20, 2025, Defendant Turner and the Doe Defendants founded the Defendant LLC.

25. On or about February 3, 2026, Defendant Turner informed Burchell that she intended to leave Urbanstrong by mid-March of 2026 and start a competing green wall business.

26. During this conversation, Defendant Turner expressed her view that Urbanstrong would be unable to continue operating its Green Walls division following her departure, questioning who would manage or run the division in her absence.

27. In response, Burchell advised Defendant Turner that Urbanstrong had no plans to exit the green wall space and that Urbanstrong already had a strong Green Walls division in place prior to her employment.

28. At no point, before, during or after the February 3, 2026 conversation, did Turner disclose that she and the Doe Defendants had already formed Defendant LLC, obtained a federal employer identification number, established banking infrastructure for the

competing entity, which had been created months earlier, or had already diverted Urbanstrong's clients in pursuit of her fraudulent scheme.

29. On or about February 5, 2026, Urbanstrong was alerted by a manager of a client, "Client 1", concerning potential wrongdoing by Defendant Turner.

30. As part of her work at Urbanstrong, Defendant Turner was responsible for putting in a bid for a particular project requested by this client.

31. Urbanstrong was awarded the contract to perform the scope of work requested by this client after its bid was accepted.

32. However, on or about February 2, 2026, as a follow-up to what appears to be an oral conversation, Defendant Turner misrepresented to "Client 1" that Urbanstrong is going through a corporate transition period, as follows:

> "hi mai,
>
> apologies for the delay, please see the attached w-9. to reiterate, **we are going through a brand transition so i am bumping you over to this email** [Defendant LLC e-mail] so you can use it for future correspondence. we appreciate our partners and clients patience during this move.
>
> further, i am including links below to past project imagery, specs, fire ratings,etc for our preserved moss. the "mixed moss" is what was quoted for your project (up to 4 species) and what we recommend to our design partners.
>
> please let me know if you have any questions. thank you." (emphasis added)

33. This was not a simple oversight or single misstep, but an intentional act in an ongoing scheme to harm Plaintiff, evidenced by the fact that Defendant Turner's e-mail from her Defendant LLC e-mail address was accompanied by a Form W-9 bearing the name and EIN of the Defendant LLC, which was dated January 14, 2026, several weeks prior to this false representation.

34. On February 3, 2026, as a result of the Defendants' misrepresentations, a contract was issued in the name of the Defendant LLC by "Client 1", as follows

"Good afternoon Lily,

Congratulations!

As discussed, **["Client 1"] will be moving forward with Lily Scott Designs LLC. (currently dba Urbanstrong LLC) for the Green Wall Package** on the Battery Park by Sunrise project. We greatly appreciate the interest in the project and look forward to working with you. The Subcontract value will be $30,690.00. Please see the attached Subcontract Agreement, for your review and signature . . ." (emphasis added)

35. Defendant Turner signed the contract on behalf of the Defendant LLC on or about February 4, 2026.

36. On or about February 5, 2026, as a result of "Client 1" outreach, Burchell activated certain archival settings within his computing systems to investigate the actions of the Defendants.

37. Although Defendant Turner appears to have deleted many of her e-mails with clients of Urbanstrong prior to Burchell activating these archival protocols, a number of e-mails immediately caught Plaintiff's eye because they unequivocally indicated that Defendant Turner was misappropriating Plaintiff's clients through false representations pursuant to a fraudulent scheme.

38. For example, on or about January 2026, Defendant Turner e-mailed "Client 2", a long-standing client of Urbanstrong, with a history of sizeable repeat orders of flowers from Urbanstrong, inquiring whether it intends to place an order in the near future.

39. When "Client 2" responded in the affirmative on February 3, 2026, noting that it intended to place a large order in April 2026, Defendant Turner promptly wrote from her e-mail account with Defendant LLC as follows:

8

"Hi megan,

no problem at all, this new year was a busy start for as well! including, **our floral and green wall division is going through a branding transition and will be operating under the name Lily Scott Designs**. I have cc'ed my new email address. please let me know what documents are needed." (emphasis added)

40. Similarly, Urbanstrong was awarded a project with "Client 3", a project on which Urbanstrong was invited to bid and for which Ms. Turner was tasked to put together the bid package on behalf of Urbanstrong, in the amount of $13,043.00 on or about January 29, 2026.

41. In furtherance of her scheme, Defendant Turner e-mailed this client from her Defendant LLC e-mail address, on February 4, 2026, as follows:

"hi libby, apologies for the delay, i left a voicemail for you earlier this morning. **our green wall division is going through a brand transition so im moving everyone over to my new email address**. please see attached for our w9 for the sub contract purposes." (emphasis added)

42. <u>Defendants' statements were false.</u>  There was no branding transition or restructuring of any kind at Urbanstrong.

43. Consistent with the foregoing, upon learning of Defendant Turner's misrepresentations, certain clients who had been contacted by Defendants expressed surprise and concern regarding the false statements that Urbanstrong was undergoing a restructuring or brand transition. In several instances, such clients declined to proceed with Defendant LLC and instead confirmed their intent to continue their relationship with Urbanstrong, requiring Plaintiff to expend time and resources to correct the misrepresentations and preserve its business relationships.

44. Urbanstrong had (and still has) no intention of pursuing any brand transition or divesting of any business lines.

9

45. Since Defendant Turner's termination from employment, Urbanstrong completed numerous green walls projects, staffing other employees with the required expertise to complete the necessary work.

46. As a result of Plaintiff's uncovering of Defendant Turner's unlawful conduct, Defendant Turner's employment was terminated on February 12, 2026.

47. Yet, Urbanstrong's investigation still continues to uncover additional wrongdoing perpetrated by the Defendants as part of their unlawful scheme.

48. During her tenure with Plaintiff, Ms. Turner was working with "Client 4," a prospective client, who was seeking Urbanstrong's expertise in connection with a moss wall project in New Jersey.

49. In violation of her duties to Plaintiff, Defendant Turner sought to divert this client through the Defendant LLC as early as January 12, 2026, providing this client with an invoice bearing the Defendant LLC's wiring instructions and other contact information.

50. As late as February 24, 2026, despite being warned of her continued obligations to Plaintiff, the Defendants again sought to divert this client from Plaintiff.

51. During the last few days of her employment with Plaintiff, Defendant Turner deleted (1) over a dozen estimates sent to Plaintiff's prospective clients, totaling $358,641 of potential business she had been developing with these prospective clients for Urbanstrong since as far back as March 2025, (2) an unknown number of e-mails to and from existing and prospective clients and (3) e-mails relating to new client inquiries.

52. Entire chains of e-mails/communications appear to have been deleted by Defendant Turner from Urbanstrong's e-mails systems as well as from an email account shared with

10

other Urbanstrong team members used to receive incoming requests such as those from the Urbanstrong website contact form.

53. Additionally, at other instances, Defendant Turner appears to have briefly engaged with potential clients via e-mail and then the entire chains were completely deleted, upon information and belief, having been redirected to Defendant LLC's e-mail addresses, including client inquiries via Plaintiff's website contact form.

54. Defendant Turner's conduct violated not only numerous common law and statutory obligations, but also her contractual obligations to Urbanstrong as enumerated in her employment agreement with Plaintiff, including her obligations to safeguard Urbanstrong's proprietary and trade secret information and not utilize it for personal gain.

55. Her post-employment conduct also violates reasonable non-solicitation and non-compete obligations, which last only 8 months in duration and are limited geographically for the same time period to the New York, New Jersey and Connecticut tri-state area.

56. As recently as April 7, 2026, despite the Defendants' representations to the contrary post-termination, Plaintiff continues to uncover further evidence of client diversion.

57. "Client 5", a prospective client, contacted Urbanstrong on or about February 2, 2026 through its website contact form, seeking a quote for a green wall project.

58. Ordinarily, the website contact form, once filled out by a prospective client, has a separate shared email account to which both Defendant Turner and Mr. Burchell have shared access.

59. Defendant Turner responded to "Client 5" on the same day from her individual Urbanstrong e-mail, seeking more details concerning the requested project and offering to discuss the project over the phone.

60. Upon information and belief, after a brief telephone conversation, "Client 5" emailed Defendant Turner to her Urbanstrong e-mail with additional details for the project for Urbanstrong to put together a bidding package.

61. Upon information and belief, Defendant Turner promptly deleted the initial website contact form email from the shared account, except for the contents initially provided by "Client 5", which were logged in the website tracker.

62. Upon further information and belief, the Defendants subsequently placed a bid for this project for "Client 5" under the Defendant LLC umbrella, which likely totals in excess of $70,000.

**AS AND FOR A FIRST CAUSE OF ACTION FOR CIVIL RICO UNDER 18 U.S.C. § 1962(A)**

63. Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

64. Defendant LLC is an enterprise engaged in or affecting interstate commerce.

65. Defendant Turner and the Doe Defendants, engaged in a pattern of racketeering activity, including at least two or more violations of 18 U.S.C. § 1832 by, with intent to convert a trade secret related to a product or service used in interstate or foreign commerce, and intending or knowing that the offense will injure any owner of that trade secret, knowingly stole or misappropriated a trade secret, and/or without authorization copied, duplicated, downloaded, uploaded, or otherwise replicated, trade secret information.

66. Specifically, among other things, Defendant Turner:

   a. Misappropriated Plaintiff's business opportunities and contracts;

   b. Upon information and belief, copied documents and information related to Plaintiff's business opportunities and contracts;

12

c. Misappropriated Plaintiff's customer information;

d. Misappropriated Plaintiff's vendor information; and

e. Misappropriated Plaintiff's work-product and likeness for future work obtained.

67. Upon information and belief, in violation 18 U.S.C. § 1341, Defendants, and each of them, transmitted documents and things in connection through the U.S. Postal Service and/or one or more private commercial interstate carriers or parcel service(s) in furtherance of their fraudulent schemes described herein.

68. Upon information and belief, in violation of 18 U.S.C. § 1343, Defendants, and each of them, transmitted writings, signs, signals, pictures or sounds by means of wire, including but not limited to telephone, email, and/or facsimile, in furtherance of their fraudulent schemes described herein.

69. In violation of 18 U.S.C. 1962(a), Defendants, and each of them, utilized income derived from the aforementioned pattern of racketeering activity to acquire, establish, and or operate Defendant LLC.

70. As a direct and proximate result of Defendants' racketeering activity, Plaintiff has been damaged.

71. Pursuant to 18 U.S.C. 1964(a), Plaintiff is entitled to injunctive relief, which may include ordering defendants to divest themselves of any interest, direct or indirect, in the Defendant LLC; imposing reasonable restrictions on Defendants' future activities or investments, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as Defendant LLC engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of Defendant LLC, making due provision for the rights of innocent persons.

**AS AND FOR THE SECOND CAUSE OF ACTION FOR UNFAIR COMPETITION
UNDER 15 U.S.C. § 1125 (a)(1)(A)**

72. Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

73. Plaintiff created a wide variety of marketing and promotional materials, including imagery, for its own use to promote Urbanstrong's business.

74. Despite this, Defendant LLC used (and likely continues to use) the foregoing materials for its own purposes.

75. Further, Defendant LLC actively misrepresented and continues to misrepresent the scope of the Urbanstrong mark and the nature and origin of the goods and/or services offered thereunder, despite receiving and claiming to have complied with a cease-and-desist letter from Urbanstrong.

76. For example, as late as April 7, 2026, Defendant LLC continues to solicit business by deceptively engaging in misrepresentations set forth in the foregoing .

77. Plaintiff has been damaged by Defendant LLC's conduct in an amount to be determined at trial.

**AS AND FOR A THIRD CAUSE OF ACTION FOR COMMON LAW UNFAIR
COMPETITION**

78. Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

79. Defendants exploited proprietary information and trade secrets acquired during their employment and/or other confidential relationship with Plaintiff.

80. Defendants misappropriated commercial advantages and/or business opportunities from Plaintiff.

14

81. Defendants misappropriated and/or claimed as their own Plaintiff's labors, skill, expenditures and/or good will.

82. Defendants have attempted to and have improperly derived profit from the reputation, name, skill, and expenditures of Plaintiff.

83. Defendants engaged in the aforementioned conduct knowingly, purposefully and/or in bad faith.

84. As a direct and proximate result of Defendants' unfair competition with Plaintiff, Defendants have been unjustly enriched, and/or Plaintiff has suffered damages.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR MISAPPROPRIATION OF TRADE SECRETS**

85. Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

86. Plaintiff possesses trade secrets, including but not limited to vendor and customer information, and client lists.

87. Defendants misappropriated the aforementioned trade secrets.

88. Defendants improperly utilized the aforementioned trade secrets in the breach of an agreement, confidence or duty.

89. As a direct and proximate result of Defendants' misappropriation of Plaintiff's trade secrets, Plaintiff has suffered damages.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR CONVERSION**

90. Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

91. Plaintiff had superior legal right to possession in contracts that were, upon information and belief, diverted or otherwise misappropriated by Defendants, which were valued at in excess of $200,000.

92. Upon information and belief, Plaintiff's continued investigation will uncover further evidence of such diversion of contracts.

93. Plaintiff has a superior right to the content of its website and social media accounts, certain contents of which have been misappropriated by Defendants.

94. Plaintiff has a superior legal right to the photographs contained on its website and social media accounts, which have been misappropriated by Defendants.

95. As a direct and proximate result of Defendants' conversion, Plaintiff has suffered damages.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

96. Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

97. Defendant Turner had a relationship with Plaintiff of trust and confidence and/or otherwise giving rise to fiduciary duties.

98. Defendant Turner owed Plaintiff duties of good faith, loyalty and candor.

99. Defendants Turner breached her fiduciary duties to Plaintiff by, among other things: misappropriating Plaintiff business opportunities, property, and trade secrets; failing to disclose conflicting business relationships and/or the establishment of a competing company; and making materially false statements to the detriment of Plaintiff, including but not limited to Defendants' intentional, deceptive, and wholly false misrepresentation

16

that Plaintiff was restructuring and intended to transfer certain parts of its business to Defendant LLC and Defendant Turner.

100. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff has suffered damages.

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR DEFAMATION**

101. Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

102. Defendants have made material factual statements that are false.

103. Defendants' false statements include, but are not limited to:

   a. That Plaintiff was divesting of certain business lines and transferring same to the Defendants.

   b. That Plaintiff was merely an assumed name for Defendant LLC.

104. Upon information and belief, Defendants made the aforementioned misrepresentations during third quarter of 2025 and the first quarter of 2026, including but not limited to in discussions with prospective and existing clients of Plaintiff as set forth in the foregoing.

105. Defendants made the aforementioned statements with knowledge of their falsity or in reckless disregard for the truth thereof.

106. Defendants made the aforementioned statements without privilege or authorization.

107. As a direct and proximate result of Defendants' false statements, Plaintiff has suffered damages, which, include, but are not limited to, lost profits related to the business to be derived from the aforementioned prospective and existing clients.

**AS AND FOR AN EIGHTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT**

108. Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

109. The foregoing contracts with "Client 1" and others constituted a valid contract between Plaintiff and a third party.

110. Defendants were aware of the contents of said contracts.

111. Defendants intentionally and improperly procured the breach of the said contracts.

112. As a direct and proximate result of Defendants' procuring the breach of the said contracts, Plaintiff has suffered damages.

**AS AND FOR A NINTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

113. Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

114. Plaintiff had an ongoing business relationship with "Client 2" and other clients that anticipated a further extension of contractual relations.

115. Defendants intentionally and through deceptive practices and wrongful acts, including but not limited to claiming to have acquired Plaintiff's business and claiming that Plaintiff no longer operated in the business space, prevented "Client 2" and other clients from extending further contractual relations with Plaintiff.

116. Plaintiff had an ongoing business relationship with "Client 2" and other clients through which Plaintiff anticipated a further extension of contractual relations.

117. As a direct and proximate result of Defendants' tortious interference with Plaintiff's business relations, Plaintiff has suffered damages.

**AS AND FOR A TENTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

118. Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

119. Defendants' have engaged culpable conduct out of malice that constitutes a crime or independent tort or which is otherwise sufficient to give rise to a cause of action for tortious interference with prospective economic advantage, including by knowingly and falsely stating future intentions by Urbanstrong to divest of certain business lines and deceptively diverting Urbanstrong's prospective clients to the Defendant LLC and deleted evidence of communications with these clients from Urbanstrong's computer systems and servers.

120. Plaintiff had prospective business relationships with certain above-referenced clients, including "Client 5" and "Client 2", that would have engaged Plaintiff in business in excess of $100,000.00.

121. Plaintiff was, in whole or in part, prevented from engaging in further economic relations with, among others, "Client 5" and "Client 2", due to Defendants' wrongful conduct.

122. Plaintiff was prevented from further pursuing business opportunities with, among others, "Client 5" and "Client 2", due to Defendants' wrongful conduct, including, but not limited to, Defendant Turner's wrongful and unauthorized deletion of estimates and related emails in Plaintiff's computer systems.

123. As a direct and proximate result of Defendants tortious interference with prospective economic advantage, Plaintiff has suffered damages.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION FOR FAITHLESS SERVANT**

124.    Plaintiff repeats, realleges, and reiterates each and every foregoing allegation as if fully set forth herein.

125.    By virtue of Defendant Turner's employment with Plaintiff, Defendant Turner owed Urbanstrong fiduciary duties of good faith, loyalty and candor

126.     By the foregoing actions of Defendant Turner, inclusive of Defendant Turner's acts of misrepresenting the business practices and products and/or services offered by Urbanstrong as well as redirecting and misappropriating Urbanstrong's clients and prospective clients to Defendant LLC while employed by Urbanstrong, Defendant Turner breached her common law duty of loyalty, good faith and candor to Urbanstrong and acted in a manner inconsistent with such duties.

127.    As a direct and proximate result of Defendant Turner's actions, Plaintiff has been exposed to damage and loss; Defendant Turner caused Defendant LLC to compete unfairly with Plaintiff; and Plaintiff has suffered and shall continue to suffer substantial and irreparable damages, including lost profits, loss of goodwill, and considerable expense for outside counsel and consultants in pursuing its legal rights in this action.

128.    As a result of the foregoing, Defendant Turner has caused damage to Plaintiff in an amount to be determined at a trial in this action but not less than $100,000.00.

129.    As a result of the foregoing, Defendant Turner's conduct warrants disgorgement of her compensation during her period of unfaithfulness under the faithless servant doctrine.

**WHEREFORE**, Plaintiff demands Judgment against Defendants, and each of them, jointly and severally, in an amount that will fully and fairly compensate Plaintiff for the damages

20

it has suffered; treble damages, costs, and attorneys' fees, statutory damages, disgorgement of Defendants' unlawfully obtained profits; punitive damages; and injunctive relief which may include corrective advertising or other measures and a prohibition against or restriction of Defendants continuing to engage in the green wall or similar business endeavors; together with costs, disbursements, and such other and further relief in Plaintiff's favor as this Court deems just, equitable, and proper.

**DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P 38(b), Plaintiff hereby demands a trial by jury on all triable issues contained in the Complaint.

Date:  April 10, 2026
       Stamford, CT

**WOLTZ & FOLKINSHTEYN, P.C.**

    s/ Benjamin Folkinshteyn

By: _____
Benjamin Folkinshteyn
Jennie Woltz
PO Box 3111
Stamford, CT 06905
203.276.0792
bfolkins@wfpclaw.com
jwoltz@wfpclaw.com

*Attorneys for Urbanstrong LLC*